UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PARK PLACE HOSPITALITY, LLC, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) No. 20 C 6403 |
| v. | )<br>) Judge Sara L. Ellis |
| CONTINENTAL INSURANCE COMPANY, | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

After suffering losses due to the COVID-19 pandemic, Plaintiff Park Place Hospitality, LLC d/b/a Hilton Garden Inn Milwaukee Northwest Conference Center ("Park Place") filed a claim with its insurer, Defendant Continental Insurance Company ("Continental"). Continental denied the claim, and Park Place filed this putative class action in response.[1] Park Place brings claims for breach of contract and related declaratory relief, as well as for bad faith denial of coverage under Illinois and Wisconsin law. Continental filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds that Park Place has not sufficiently alleged "direct physical loss of or damage to" its property as required to obtain coverage under its insurance policy's language. This failure dooms not only Park Place's breach of contract and declaratory judgment claims but also its bad faith claims, and so the Court grants Continental's motion to dismiss and dismisses Park Place's complaint without prejudice.

---

[1] The Court has reviewed the parties' supplemental statement on subject matter jurisdiction and finds that it has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. 1332(d).

## BACKGROUND

**I.     The Insurance Policy**

Park Place owns and operates a hotel, restaurant, lounge, and banquet and meeting facilities in Milwaukee, Wisconsin. Park Place, along with two sister properties in Illinois, obtained a commercial property insurance policy with policy number 6057091073 (the "Policy") from Continental. The Policy covered the period from June 1, 2019 through June 1, 2020.

As relevant here, the Policy provides coverage for "direct physical loss of or damage to real property at a location directly caused by a covered peril." Doc. 1-1 at 4. The Policy also provides business income and extra expense coverage, with Continental agreeing to "pay for the actual loss of business income [Park Place] sustains during the period of restoration due to the necessary suspension or delay of operations, and extra expense, caused by direct physical loss of or damage to property at that location directly caused by a covered peril." *Id.* The Policy defines a "covered peril" as "a fortuitous cause or event, not otherwise excluded, which occurs during this policy period." Doc. 1-2 at 17.

The Policy contains an exclusion for "loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of . . . microbes," Doc. 1-1 at 25, which includes by definition viruses, Doc. 1-2 at 24. But the Policy also includes additional coverage related to microbes, which overrides the microbe exclusion "to the extent of the coverage provided under this ADDITIONAL COVERAGE." Doc. 1-1 at 15. Specifically, the microbe additional coverage states:

> 1. The Insurer will pay the following provided . . . microbes are the direct result of a covered peril, other than fire or lightning:
>
> a. direct physical loss of or damage to covered property caused by . . . microbes, including the cost of removing the . . . microbes;

> b. the reasonable cost to tear out and replace any part of the covered building or other property as needed to gain access to the . . . microbes; and
>
> c. the cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is reason to believe that . . . microbes are still present.
>
> 2. . . . [T]he insurer will also pay, as provided, for:
>
> a. the actual loss of business income the Named Insured sustains during the period of restoration due to the necessary suspension or delay in operations;
>
> . . .
>
> c. extra expense,
>
> due to the:
>
> i. direct physical loss of or damage to covered property caused by . . . microbes that are the result of a covered peril, other than fire or lightning; or
>
> ii. prolonged period of restoration due to the remediation of . . . microbes from a covered loss.

Doc. 1-1 at 14–15. The Policy's microbe additional coverage has a $50,000 limit.

As relevant here, the Policy defines "period of restoration" as beginning on "the time and date that the physical loss or damage that causes suspension of operations occurs." Doc. 1-2 at 27. If the named insured resumes operations "with reasonable speed," the "period of restoration" ends on the "the date when the premises where the loss or damage occurred could have been physically capable of resuming the level of operations which existed prior to the loss or damage." *Id.* at 28. And if the named insured does not resume operations or fails to do so with reasonable speed, the "period of restoration" ends on "the date when the premises where the loss or damage occurred could have been restored to the physical size, construction, configuration and material specifications which existed at the time of loss or damage." *Id.*

## II. Park Place's Insurance Claim

On March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic. In response to the COVID-19 pandemic, the Governor of Wisconsin and the Wisconsin Department of Health issued a series of orders aimed at stopping the spread of COVID-19. Among other things, these orders initially limited the capacity of restaurants and bars to "50 percent of seating capacity or 50 total people, whichever is less," and required "distancing of 6 feet between tables, booths, bar stools, and ordering counters." Doc. 1 at 14. Quickly, though, the governor revised the orders to allow only takeout and delivery. Although Park Place's hotel qualified as an essential business, Park Place nonetheless had to reduce operations at its restaurant, lounge, and banquet and meeting facilities to comply with the orders. By the time Park Place filed its complaint, it again offered some limited on-site dining in addition to takeout. But it still could not host meetings or other large events in its banquet and meeting facilities. In addition to the capacity limitations, Park Place has had to perform additional cleaning and remediation measures in its efforts to combat the spread of COVID-19.

In light of the spread of COVID-19 and the state orders, Park Place filed a claim with Continental in March 2020, seeking coverage for its business losses. On June 5, 2020, Continental denied Park Place's claim, concluding that the Policy did not provide coverage because "there is no indication that . . . operations were suspended by direct physical loss of or damage to property."[2] Doc. 1-3 at 4. This suit followed.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

---

[2] In denying Park Place's claim, Continental also explained that the Policy's civil authority provision did not provide coverage. Because Park Place does not invoke the civil authority provision in its complaint, the Court does not address its applicability in this Opinion.

1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Scope of Coverage

Under Illinois law, the construction of an insurance policy is a question of law, with the Court interpreting the policy according to the general rules of contract interpretation.[3] *Hess v. Est. of Klamm*, 2020 IL 124649 ¶¶ 14–15; *see also Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co.*, 881 N.W.2d 285, 290–91 (Wis. 2016). When interpreting an insurance policy, the Court's primary objective "is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Hess*, 2020 IL 124649, ¶ 15 (citation omitted). The Court gives unambiguous policy language its "plain and ordinary meaning." *Sanders v. Ill. Union Ins. Co.*, 2019 IL 124565, ¶ 23; *see also Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 759 N.W.2d 613, 620 (Wis. 2009). The Court will not find ambiguity simply because the parties disagree as

---

[3] The Court need not engage in a choice of law analysis because the parties do not point to any material differences between the substantive laws of Illinois and Wisconsin. The Court therefore applies Illinois law, the forum state, and includes parallel citations to Wisconsin law where relevant. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009); *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 25 ("[A] choice-of-law determination is required only when the moving party has established an actual conflict between state laws.").

to a provision's meaning. *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 490 (2010). Rather, an ambiguity exists where policy language is subject to more than one reasonable interpretation. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Courts construe ambiguous terms strictly against the drafter and in favor of coverage. *Outboard Maine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 118 (1992).

  Here, Continental argues that Park Place's breach of contract and declaratory judgment claims fail because the Policy does not cover Park Place's alleged losses. Continental contends that Park Place has failed to allege the required "direct physical loss of or damage to" its property or, alternatively, that the microbes exclusion bars recovery for any losses caused by COVID-19. Continental urges that "physical loss" and "physical damage" require a tangible alteration in the property's material state, which it claims Park Place cannot allege. Park Place disagrees, arguing that COVID-19 particles had a physical impact on its property, essentially rendering it unusable, and that the government closure orders prevented Park Place from using its space and functioning as intended.

  The parties' dispute centers around what constitutes "direct physical loss of or damage to" property, a requirement for coverage under any applicable Policy provision. While the Policy does not define "physical loss" or "physical damage," that does not automatically render these terms ambiguous. *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 223 Ill. 2d 407, 417 (2006). In considering a similar question, the Illinois Supreme Court concluded that "physical injury," under its plain and ordinary meaning, "unambiguously connotes damage to tangible property causing an alteration in appearance, shape, color or in other material dimension" and does not include "intangible damage to property, such as economic loss." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 312 (2001). More recently, the majority of

courts considering COVID-19 insurance claims have agreed that "physical" loss or damage requires tangible or concrete injury. *See, e.g.*, *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) ("[T]here must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction."); *Image Dental, LLC v. Citizens Ins. Co. of Am.*, No. 20-CV-02759, 2021 WL 2399988, at *4 (N.D. Ill. June 11, 2021) ("The nature of the loss must be *physical*, not intangible, immaterial, economic, or regulatory."); *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693 (N.D. Ill. 2000) ("The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure.").

Park Place argues, however, that the Court should not require a tangible injury because "loss of" and "damage to" cannot mean the same thing, with "loss of" instead allowing for the loss of access to a business' physical space. *See Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, --- F. Supp. 3d ----, 2021 WL 767617, at *4 (N.D. Ill. Feb. 28, 2021) ("[A] reasonable factfinder could find that the term 'physical loss' is broad enough to cover . . . a deprivation of the use of its business premises."); *In re Soc'y Ins. Co.*, --- F. Supp. 3d ----, 2021 WL 679109, at *8 (N.D. Ill. Feb. 22, 2021) (because "'physical loss' must cover something different from 'physical damage,'" to obtain coverage for "physical loss," a plaintiff "need not plead or show a change to the property's physical characteristics"); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800–01 (W.D. Mo. 2000) ("Defendant conflates 'loss' and 'damage' in support of its argument that the Policies require a tangible, physical alteration."). The Court agrees that the terms "loss of" and "damage to" must mean different things: "[t]he plain wording of the phrase

requires either a permanent disposition of the property due to a physical change ('loss'), or physical injury to the property requiring repair ('damage')." *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, --- F. Supp. 3d ----, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021); *see also Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 180 (S.D.N.Y. 2020) ("[T]he term 'loss' would seem to include 'theft or misplacement,' which would not constitute damage to the property. Further, 'loss' would extend to the *complete* destruction of property, whereas 'damage' contemplates a lesser injury." (citations omitted)). But the Court respectfully disagrees that the Policy's language allows for the conclusion that "physical loss of" property includes loss of use of the property without any tangible or concrete loss. *See Image Dental*, 2021 WL 2399988, at *5 ("A 'physical loss' of property does not mean a mere inability to run a business."). Such an interpretation improperly reads "physical" out of the Policy's language. *See id.* at *6–7 ("Under the policy in question, a *physical* loss is a *sine qua non* of coverage. A loss of use without a physical loss doesn't count."); *Chief of Staff LLC v. Hiscox Ins. Co.*, --- F. Supp. 3d ----, 2021 WL 1208969, at *3 (N.D. Ill. Mar. 31, 2021) ("[I]f the mere loss of use were covered, what would be the difference between 'direct loss' and 'direct *physical* loss'?"). Therefore, the Court rejects Park Place's preferred interpretation and instead agrees with the majority of courts to have considered the question that "direct physical loss of or damage to" property requires concrete or tangible loss or damage. *See Melcorp, Inc. v. W. Am. Ins. Co.*, No. 20 C 4839, 2021 WL 2853371, at *2 (N.D. Ill. July 8, 2021) ("'[P]hysical loss' refers not to *any* deprivation, but rather to a deprivation caused by a tangible or concrete change in the condition or location of the thing that is lost."); *Image Dental*, 2021 WL 2399988, at *7 (collecting cases).

      Here, Park Place has failed to allege any such actual physical loss or damage. "The coronavirus does not physically alter the appearance, shape, color, structure, or other material

dimension of the property." *Sandy Point Dental,* 488 F. Supp. 3d at 694; *see also L&J Mattson's Co. v. Cincinnati Ins. Co.*, No. 20 C 7784, 2021 WL 1688153, at *5 (N.D. Ill. Apr. 29, 2021) ("The presence of virus in the air does not physically damage any of the property at the premises. Nor does the presence of the virus on surfaces *physically damage* them."). The Court does not find persuasive Park Place's analogy to cases finding that the presence of asbestos fibers, mold, or other persistent hazards cause a physical loss. *See* Doc. 18 at 17–18. Unlike COVID-19, which Park Place acknowledges did not render the premises completely unusable or uninhabitable, the cases finding coverage based on the presence of asbestos, mold, or other hazards "generally involve persistent physical contamination that requires repair or replacement, rather than cleaning and disinfecting, to remediate." *See Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, No. 1:20-cv-02512, 2021 WL 3187521, at *7 (S.D. Ind. July 27, 2021); *Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, --- F. Supp. 3d ----, 2021 WL 1600831, at *5–6 (W.D.N.Y. Apr. 23, 2021) ("[C]ourts have consistently ruled that contamination by a persistent chemical or biological agent, not otherwise excluded from coverage, may cause a direct physical loss if it renders the insured property unusable. . . . [C]ontamination that is temporary. . . or that imposes remediation costs without preventing use of the building . . . is unlikely to qualify as a direct physical loss to the insured premises." (collecting cases)). Additionally, the government closure orders caused only an economic loss, not a physical loss, and so cannot provide a basis for coverage. *See Chief of Staff*, 2021 WL 1208969, at *4 (collecting cases that have interpreted "direct physical loss" of property provision to not "apply where, as here, a government closure order prohibits access to a business's premises for reasons unconnected to any change in the physical condition of those premises, or in the physical condition or location of property at those premises"); *Bradley Hotel Corp. v. Aspen Specialty Ins.*

9

*Co.*, 508 F. Supp. 3d 249, 254 (N.D. Ill. 2020) (policy did not cover losses due to government orders requiring a suspension of operations where no change to the physical property occurred); 10A Steven Plitt et al., Couch on Insurance § 148:46 (3d ed. 2021) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (footnotes omitted)). Therefore, because Park Place has not alleged any physical loss of or damage to its property, the Policy does not provide it with coverage for the losses it has suffered due to the COVID-19 pandemic and government closure orders, requiring dismissal of its breach of contract and declaratory relief claims.

## II.     Bad Faith Denial

Having found that Park Place's coverage claims fail, the Court concludes that the bad faith denial claims under both Illinois and Wisconsin law fail as well. Under Illinois law, Section 155 "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 519 (1996); 215 Ill. Comp. Stat. 5/155. And under Wisconsin law, a first-party bad faith claim exists where "the insured insists that the insurer wrongfully denied benefits or intentionally mishandled a legitimate claim for benefits." *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 798 N.W.2d 467, 479 (Wis. 2011). But when "an insurer denies the claim of an insured because no coverage exists, the insurer has not failed to honor its contractual obligations under an insurance policy." *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002); *see also Brethorst*, 798 N.W.2d at 480 ("[F]irst-party bad faith cannot exist

without some wrongful denial of benefit under the insurance contract."). Accordingly, because Park Place has not sufficiently alleged claims for coverage under the Policy, it also cannot proceed on its claims for bad faith denial of coverage under Illinois or Wisconsin law.

## CONCLUSION

For the foregoing reasons, the Court grants Continental's motion to dismiss [15]. Although the Court does not see how Park Place could cure the deficiencies in its complaint, the Court will provide it with one opportunity to replead its claims. Therefore, the Court dismisses Park Place's complaint without prejudice and orders Park Place to file an amended complaint by September 10, 2021. If Park Place does not file an amended complaint, the dismissal will automatically convert to one with prejudice and the Court will enter judgment accordingly.

Dated: August 10, 2021

_____
SARA L. ELLIS
United States District Judge